IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NOE TORRES,

     Petitioner,

v.                                    CV 19-00209 JB/JHR

DWAYNE SANTISTEVAN, *et al*,

     Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATION

This matter comes before the Court on Mr. Torres' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* [Doc. 1], filed on March 11, 2019; *Motion to Proceed in Forma Pauperis* [Doc. 2], filed March 11, 2019; and *Motion for Appointment of Counsel* [Doc. 5], filed March 15, 2019. On March 13, 2019, United States District Judge James O. Browning referred the matter for recommended findings and final disposition to United States Magistrate Judge Jerry H. Ritter. [Doc. 4]. Upon review of the record, I propose to find that Mr. Torres falls short on each required showing and recommend, after consideration of the parties' objections if any, that the Court deny Mr. Torres' requested relief.

## I.    FACTUAL BACKGROUND[1]

Early on the morning of September 15, 2005, nine shots were fired through a bedroom window of an apartment in Clovis, killing ten-year-old Carlos Perez. [Doc. 8-2, p. 24]. Carlos had been sleeping in the bedroom he shared with his older brother, Ruben Perez, who was the intended victim of the shooting. [*Id.*].

---

[1] On the record currently before the Court, the facts in this section are undisputed, except as noted.

Two distinct groups of actors were involved in the shooting. [*Id.*]. The first group rode in a Suburban to apartment complex where the shooting took place. [*Id.*]. This group included Orlando Salas, Demetrio Salas, David Griego, and Melissa Sanchez. [*Id.*]. The second group arrived at the apartment complex in a Camry and included Mr. Torres, Edward Salas, Krystal Anson, and Ashley Garcia. [*Id.*].

The day before the shooting Orlando Salas and Ruben Perez were involved in an altercation at their high school. [*Id.*]. Later that night or in the early hours of September 15th, Orlando and his brother Demetrio picked up Melissa Sanchez and David Griego, in the Salas' blue and white Suburban. [*Id.*]. They drove into an alleyway near the apartment complex where Ruben lived. [*Id.*]. Orlando and Demetrio said they wanted to get that "sewer rat," referring to Ruben. [*Id.*].

Demetrio then dropped off Melissa and Orlando at his friend Eric Gutierrez's house nearby. [*Id.*, p. 25]. Demetrio said he and David were "going to go do a mission" and left. [*Id.*]. The two returned approximately five minutes later. [*Id.*]. Demetrio was holding a gun and appeared to be "on an adrenaline rush." [*Id.*]. He said, "We just went and blasted nine rounds into that sewer rat's house, pow, pow, pow, pow." [*Id.*]. He told Melissa not to touch him because he had gunpowder residue on him. [*Id.*]. Eric turned on his police scanner, and they heard that a child had been shot and that police were looking for a blue and white Suburban. [*Id.*]. Eric heard someone say, "Oh we got the wrong ... guy." [*Id.*].

In the early hours of September 15, 2005, Mr. Torres, along with Krystal Anson, Ashley Garcia, and Edward Salas (Demetrio and Orlando Salas' older brother) rode in Krystal's while Camry to the apartment complex where Ruben Perez lived. [*Id.*]. They parked the Camry on the street near the apartments. [*Id.*]. Mr. Torres and Edward got out and told Krystal and Ashley to stay in the car. [*Id.*]. The Salas' Suburban was parked down the street from the Camry. [*Id.*]. Two

people got out of the Suburban and met Mr. Torres and Edward at the apartment complex. [*Id.*].

Mr. Torres, Edward, and the two from the Suburban shook hands then disappeared from the sight.

[*Id.*].

Krystal and Ashley got out of the Camry and walked to a nearby park. [*Id.*]. The girls were

talking and smoking cigarettes at the park when they heard gunshots and ran back to the Camry.

[*Id.* at p. 26]. Mr. Torres and Edward also ran to the Camry. [*Id.*]. When Mr. Torres got to the car

he was described as excited and smelling like "burned matches." [*Id.*]. Mr. Torres got into the

driver's seat of the Camry, Edward got into the front passenger seat, the girls got into the back

seat, and they left the scene. [*Id.*]. Edward received a phone call and Mr. Torres turned up the

volume on the radio but Krystal heard Edward say to Mr. Torres, "We didn't get him. We got the

little boy." [*Id.*]. Mr. Torres replied, "Are you sure it was the little boy?" [*Id.*].

The next day, Mr. Torres and his girlfriend fled to Mexico. [*Id.*].

## II.    PROCEDURAL BACKGROUND

On October 7, 2005, Mr. Torres was indicted on one count of first degree murder, contrary

to NMSA 1978, Section 30-2-1(A) (1994), one count of attempted first degree murder, contrary to

NMSA 1978, Sections 30-2-1(A) and 30-28-1 (1963), and one count of shooting at a dwelling or

occupied building, contrary to NMSA 1978, Section 30-3-8(A) (1993). [Doc. 12-1, pp. 26-27].

Mr. Torres failed to appear for arraignment on October 17, 2005, and a bench warrant was

issued on October 19, 2005. [Doc. 12-1, p. 38]. Mr. Torres remained at large until early 2012,

when he was apprehended in Mexico. [Doc. 12-1, p. 43]. On July 11, 2012 Mr. Torres was

extradited from Mexico and was subsequently arraigned on the charges in the October 7, 2005

indictment.  [Doc. 12-1, p. 67].

On January 11, 2013, a Superseding Indictment was filed which charged Mr. Torres with

one count of first degree murder, contrary to Section 30-2-1(A), one count of attempted first degree murder, contrary to Sections 30-2-1(A) and 30-28-1, one count of shooting at a dwelling or occupied building, contrary to Section 30-3-8(A), one count of conspiracy to commit first degree murder, contrary to Section 30-2-1(A) and NMSA 1978, Section 30-28-2 (1979), one count of conspiracy to shoot at a dwelling or occupied building, contrary to Sections 30-3-8(A) and 30-28-2, possession of a firearm by a felon, contrary to NMSA 1978, Section 30-7-16 (2001), *amended by* NMSA 1978, § 30-7-16 (2019), and intimidation of a witness, contrary to NMSA 1978, Section 30-24-3(A)(3) (1997). [Doc. 12-1, pp. 176-178]. A jury found Mr. Torres guilty on all counts. [Doc. 12-4, pp. 2-8]. Mr. Torres was sentenced to a total term of life imprisonment plus 31.5 years, which included a three-year habitual offender enhancement. [Doc. 12-4, pp. 85-88].

Mr. Torres appealed his conviction to the New Mexico Supreme Court arguing that: (1) several of the convictions violated constitutional protections against double jeopardy [Doc. 1, p. 97]; (2) the convictions were not supported by sufficient evidence [Doc. 1, p. 97]; (3) the district court erred in not allowing him to cross-examine a witness about a prior bad act [Doc. 1, p. 97]; (4) his constitutional rights were violated when the district court did not allow him to attend sidebar conferences with his counsel and because he was shackled to the table during the trial [Doc. 1, pp. 97-98]; and (5) a prior felony was unlawfully used to impose a habitual offender sentence enhancement [Doc. 1, p. 98].

The New Mexico Supreme Court affirmed Mr. Torres' convictions for first-degree murder, attempted first-degree murder, and conspiracy to commit first-degree murder, reversed Mr. Torres' convictions for shooting at a dwelling and conspiracy to shoot at a dwelling as violative of constitutional protections against double jeopardy, and vacated the habitual offender enhancement of his sentence. [Doc. 1, p. 98].

On March 20, 2018, the state district court entered an Amended Judgment, Sentence, and Commitment to reflect the reversal of Mr. Torres' convictions for shooting at a dwelling and conspiracy to shoot at a dwelling and revising his sentence to life imprisonment plus 19.5 years, with credit for the period for which Mr. Torres had already been confined. [Doc. 1, pp. 127-130].

Subsequently, Mr. Torres sought post-conviction relief by filing a Petition for a Writ of Habeas Corpus in state court on July 12, 2018. [Doc. 1, pp. 113-117]. Mr. Torres argued that: (1) he was denied effective assistance of counsel [Doc. 1, pp. 119-120]; (2) the indictment should have been dismissed due to violations of the Interstate Agreement on Detainers (IAD), NMSA 1978, § 31-5-12 (1971) [Doc. 1, p. 121]; (3) the trial court erred in denying his pro se motion for recusal [Doc. 1, p. 122]; (4) the indictment should have been dismissed because a State's witness manipulated the grand jury [Doc. 1, p. 124]; (5) he was unconstitutionally subject to pretrial detention at the Penitentiary of New Mexico [Doc. 1, pp. 124-125]; and (6) he should be granted leave to amend his petition to include "any additional issues [in the event he received the] full discovery, tape proceedings and copied transcript proceeding" that he requested. [Doc. 1, p. 126]. The state district court summarily dismissed Mr. Torres' habeas corpus petition on October 9, 2018. [Doc. 1, pp. 166-170]. Mr. Torres' subsequent Petition for a Writ of Certiorari was denied by the New Mexico Supreme Court on November 7, 2018. [Doc. 1, p. 185].

Mr. Torres filed the instant Petition on March 11, 2019, bringing forth the claims raised in his direct appeal to the New Mexico Supreme Court as well as the claims brought in his state habeas petition. [Doc. 1, pp. 3-45]. Specifically, Mr. Torres raises the following grounds for relief: (1) the trial court erred in denying his motion for directed verdict because there was insufficient evidence to support his convictions [Doc. 1, pp. 5, 16-17]; (2) his convictions violate constitutional protections against double jeopardy [Doc. 1, pp. 7, 18-19]; (3) the trial court erred in using a time-

barred prior felony conviction to impose a habitual offender sentence enhancement [Doc. 1, pp. 8, 20];[2] (4) the trial court erred in not allowing him to cross-examine a state's witness about a prior bad act [Doc. 1, pp. 10, 21-22]; (5) the trial court erred in allowing him to be shackled to the table during trial [Doc. 1, pp. 23-24]; (6) he was denied effective assistance of counsel [Doc. 1, pp. 26-27]; (7) the indictment should have been dismissed due to IAD violations [Doc. 1, pp. 28-29]; (8) the trial court erred in denying his pro se motion for recusal [Doc. 1, pp. 30-31]; (9) the indictment should have been dismissed because a State's witness misled and manipulated the grand jury [Doc. 1, pp. 32-33]; (10) he was unconstitutionally subject to pretrial detention at the Penitentiary of New Mexico [Doc. 1, pp. 34-36]; and (11) he should be permitted to amend his petition to include "any additional issues [in the event he received the] full discovery, tape proceedings and copied transcript proceeding" that he requested. [Doc. 1, p. 39].

Because Mr. Torres filed his Petition after April 24, 1996 it is subject to the terms of the Antiterrorism and Effective Death Penalty Act (AEDPA). For purposes of the "in custody" requirement of 28 U.S.C § 2254 (2012), as amended AEDPA, Respondents concede that Petitioner was in custody at the filing of the Petition and the Answer. [Doc. 8, pp. 3-4].

## III.    ANALYSIS

### A.    Mr. Torres' Claims Regarding Alleged IAD Violations, Pretrial Detention, Recusal, Errors in the Grand Jury Proceedings, and Mr. Torres' Request for Leave to Amend His Petition Are Not Reviewable Under § 2254

#### 1.    Mr. Torres' Has Not Shown "Special Circumstances" Sufficient to Render His IAD Claim Cognizable Under § 2254

Forty-eight States, the Federal Government, and the District of Columbia have entered into the IAD, 18 U.S.C. App. § 2, p. 692, an interstate compact. *Alabama v. Bozeman*, 533 U.S. 146,

---

[2] The three-year habitual offender sentence enhancement was vacated by the New Mexico Supreme Court on Mr. Torres' direct appeal [Doc. 1, p. 111], and Mr. Torres concedes that he has obtained relief relative to this issue [Doc. 1. p. 5]. Accordingly, it is not addressed here.

148 (2001). The IAD "creates uniform procedures for lodging and executing a detainer, *i.e.*, a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Id.* To this end, the IAD "(1) gives a prisoner the right to demand a trial within 180 days"; and "(2) gives a State the right to obtain a prisoner for purposes of trial, in which case the State (a) must try the prisoner within 120 days of his arrival, and (b) must not return the prisoner to his original place of imprisonment prior to that trial." *Bozeman*, 533 U.S. at 151 (internal quotation marks and citation omitted).

Because the rights afforded by the IAD are statutory rather than fundamental or constitutional, IAD claims are not cognizable under § 2254 unless "special circumstances," *i.e.*, "a fundamental defect which inherently results in a complete miscarriage of justice or omissions inconsistent with demands of fair procedure" exist. *Carchman v. Nash*, 473 U.S. 716, 719 (1985).

Here, Mr. Torres asserts that the state violated the IAD by not bringing him to trial within 120 days of his extradition to New Mexico. [Doc. 1. p. 28]. However, Mr. Torres has not shown, or even alleged any "fundamental defect which inherently results in a complete miscarriage of justice or omissions inconsistent with demands of fair procedure" sufficient to bring his IAD claim within the scope of those reviewable under § 2254.

Even if Mr. Torres had shown "special circumstances" such that his IAD claim was reviewable under § 2254, the record does not reflect and Mr. Torres does not allege that he was serving a criminal sentence in another state at the time that he was extradited to New Mexico or that his extradition resulted from a related detainer. Thus, the IAD, which governs the transfer of custody of a state prisoner from one state to another to face pending charges, does not apply under the facts before the Court.

### 2. Mr. Torres' Claim That he Was Subject to Unconstitutional Pretrial Detention is Not Cognizable Under § 2254

Mr. Torres alleges that his pretrial detention at the Penitentiary of New Mexico violated the protections of the Eighth Amendment against cruel and unusual punishment. [Doc. 1, pp. 34-35]. Mr. Torres makes reference to his motion filed in the state district court in which Mr. Torres objected to the restrictions of his confinement. Specifically, Mr. Torres challenged restrictions he alleged were placed on his access to personal property, visitation and telephone calls. [Doc. 1, pp. 154- 157].

Mr. Torres' claim regarding his pretrial detention constitutes a challenge to the conditions of confinement, which is not a proper claim under § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) ("It is well-settled law that prisoners who wish to challenge only the conditions of their confinement...must do so through civil rights lawsuits...not through federal habeas proceedings." (alterations in original) (internal quotation marks and citation).

Moreover, it is noteworthy that Mr. Torres is no longer in pretrial detention. Nor is he imprisoned at the Penitentiary of New Mexico.[3] And he makes no claim that he is currently restricted in his access to personal property, visitation and telephone calls. [Doc. 1, pp. 34-35]. *See Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (per curiam) (holding that a claim to pretrial bail was moot once defendant was convicted); *United States v. Ream*, 506 F. App'x 842, 845 (10th Cir. 2013) (unpublished) (holding that the petitioner's claim that he should not have been detained prior

---

[3] Mr. Torres is currently serving his sentence at the Lea County Correctional Facility in Hobbs, New Mexico. [Doc. 1, p. 1].

to trial was mooted by his conviction); *Williams v. Slater*, 317 F. App'x 723, 725 (10th Cir. 2008) (unpublished) (holding that the petitioner's conviction and sentence have mooted his request for an order to show cause for his pretrial confinement); *United States v. Meyers,* 95 F.3d 1475, 1488 (10th Cir.1996) (holding district court's failure to hold a timely pretrial release hearing was moot in light of defendant's subsequent conviction); *see also Thorne v. Warden, Brooklyn House of Detention for Men,* 479 F.2d 297, 299 (2d Cir.1973) ("Since [petitioner] is now held as a convicted defendant rather than merely on a criminal charge not yet brought to trial, the issue as to the legality of his continued *pretrial* detention has been mooted, and it therefore becomes unnecessary to resolve the constitutional issues presented." (emphasis in original)).

   a. **Even if Mr. Torres' Claim Was Reviewable Under § 2254, Mr. Torres Has Not Shown That His Pretrial Detention Was Unconstitutional**

Challenges to pretrial conditions of confinement are analyzed under the Fourteenth Amendment's due process clause, rather than under the Eighth Amendment, "because the Eighth Amendment is concerned with punishment, and a pretrial detainee may not be punished prior to an adjudication of guilt." *Sanders v. Hopkins*, 131 F.3d 152 (10th Cir. 1997). "The central inquiry then becomes whether the challenged condition of confinement amounts to a punishment." *Id.* (internal quotation marks and citation omitted).

"Historically, the government has enjoyed the authority to detain until trial those defendants who pose a flight risk." *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013). "And no doubt those who find themselves detained in this manner experience a great many restrictions on their liberty—restrictions many of us would regard as punishment in themselves." *Id.* Whether such restrictions "pass, as a matter of law, from constitutionally acceptable to constitutionally impermissible…turns on the answers to two questions." *Id.* First, the Court considers whether an "expressed intent to punish on the part of detention facility officials" exists.

*Id.*; *see Bell v. Wolfish*, 441 U.S. 520, 538 (1997). "If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Blackmon*, 734 F.3d at 1241; *see Bell*, 441 U.S. at 539.

The government may have a legitimate nonpunitive interest in ensuring a defendant's presence at trial and may reasonably keep him in custody pending trial if he proves a flight risk. *See Blackmon*, 734 F.3d at 1241. "Likewise, the government may have a legitimate interest in ensuring the safety and order of the facilities where it houses pretrial detainees." *Id.* "Restraints bearing a reasonable relationship to interests like these do not constitute punishment even if they are discomforting." *Id.*; *see Bell*, 441 U.S. at 540.

It is not clear from the record whether and to what extent Mr. Torres' access to telephone calls and visitation were restricted during his pretrial detention. [Doc. 1, pp. 154-163]. Moreover, Mr. Torres has not demonstrated or even argued here that the alleged restrictions were imposed with an intent to punish and were not reasonably related to a legitimate state interest. [Doc. 1, pp. 34-35].

   **3.  Mr. Torres' Claim That the State Court Judge Should Have Recused Himself and Mr. Torres' Claim Regarding Erroneous Grand Jury Testimony Present State Law Claims With no Basis for Federal Habeas Relief**

Federal habeas relief is not available for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). It is not the province of the federal courts to re-examine state-court determinations of state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Absent a specific constitutional violation, federal habeas review of state court errors is limited to whether the error "so infected the [proceeding]

with unfairness as to make the resulting conviction a denial of due process." *Lewis*, 497 U.S. at 780 (quotation omitted).

### a. Mr. Torres' Claim That the State Court Judge Should Have Recused Himself Raises a Question of State Law Not Cognizable on Federal Habeas

Mr. Torres argues that the state district court judge erred in not recusing himself from Mr. Torres' state habeas proceedings because the judge, who has also presided over the underlying criminal proceedings, initially appointed an attorney to represent Mr. Torres in the criminal proceedings who had a conflict of interest.[4] [Doc. 1, p. 30]. Although Mr. Torres alleges a constitutional violation with respect to the initial appointment of counsel, Mr. Torres does not raise any violation of federal law or constitutional violation arising from the state district court judge's decision not to recuse himself from Mr. Torres state habeas proceedings. *See Martin v. McKune*, 986 F.2d 1428 (10th Cir. 1993) (recognizing that an attack on the impartiality of a state district court judge in a habeas proceeding was a state law claim not reviewable on federal habeas where no constitutional error is raised).

### b. Mr. Torres' Claim Regarding Erroneous Grand Jury Testimony Raises a Question of State Law Not Cognizable on Federal Habeas

Mr. Torres claims that the trial court erred in denying his motion to dismiss the indictment against him based on his allegations that a state investigator gave false testimony and manipulated the grand jury. [Doc. 1, pp. 32-33].

Few issues concerning grand jury procedures are subject to federal habeas review. This is generally so because, as the Supreme Court has "stated many times[,] federal habeas corpus relief does not lie for errors of state law." *Estelle,* 502 U.S. at 67. It is also in part because of the long-

---

[4] The record reflects that after this issue was raised by Mr. Torres in the underlying criminal proceedings, new conflict-free counsel was appointed well in advance of trial. [Doc. 8-2, pp. 116-117].

settled law that "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment." *Branzburg v. Hayes,* 408 U.S. 665, 687–88 n. 25 (1972).[5] The only due process inquiry concerning a grand jury indictment is whether it gives the defendant sufficient notice of the charge. The notice issue is neither argued nor arguable here because the crimes represented in the indictment are identical to the crimes represented in the petit jurors' verdict. [Doc. 12-1, p. 176; 12-4, pp. 2-8]; *e.g., Hain v. Gibson,* 287 F.3d 1224, 1232-32 (10th Cir. 2002); *Johnson v. Gibson,* 169 F.3d 1239, 1252 (10th Cir.) (1999).

Where the notice requirement is satisfied, any alleged defects concerning the sufficiency of the indictment or the grand jury procedures are essentially moot following a jury verdict of guilty. *See United States v. Mechanik,* 475 U.S. 66, 70 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."); *see also Tisthammer v. Williams,* 49 Fed.Appx. 757, 765 (10th Cir. 2002) (unpublished) (acknowledging that the jury's finding that the defendant was guilty beyond a reasonable doubt alleviates the concern that the grand jury's finding of probable cause to charge was deficient).

### 4. Mr. Torres' Request for Leave to Amend His Petition is Premature

Amendment of pleadings is governed by Federal Rule of Civil Procedure 15.[6] Because Mr. Torres did not file an Amended Petition within 21 days of Respondents' answer, he is not entitled to amend as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). Rather, Mr. Torres may only

---

[5] Racial discrimination in the selection of grand jury members presents an exception to the general rule. *Rose v. Mitchell,* 443 U.S. 545, 560–61 (1979).

[6] Federal Rule of Civil Procedure 15 applies to § 2254 cases. *Mayle v. Felix,* 545 U.S. 644, 654 (2005).

amend his Petition with Respondents' consent or this Court's leave. *Id.* 15(a)(2).

Rule 15 provides that leave to amend should be freely given when justice so requires. *Id.* "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999). This policy is not limitless and must be balanced against Fed.R.Civ.P. 7(b)(1), which provides that any motion "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." *Calderon*, 181 F.3d at 1186 (internal quotation marks and citation omitted).

In the spirit of Rule 15, the Tenth Circuit has held that failure to file a formal motion to amend is not always fatal. *See Calderon*, 181 F.3d at 1186. However, any request to amend "must give adequate notice to the court and the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it." *Id.* at 1186-87 (recognizing that "[r]equiring notice to the court and the opposing party of the basis for the motion reduces potential prejudice to either party and assures that the court can comprehend the basis of the motion and deal with it fairly." (internal quotation marks and citation omitted)).

Here, Mr. Torres requests leave to amend his Petition to include "any additional issues" in the event he receives the "full discovery, tape proceedings and copied transcript proceeding" that he requested during his state habeas proceedings. [Doc. 1, p. 39]. Mr. Torres has not provided the Court with a proposed Amended Petition or otherwise identified what additional issues may arise upon receipt of such discovery that would justify an amendment. [*Id.*]. Accordingly, Mr. Torres' request to amend is premature and should be denied for lack of adequate notice of the basis for any proposed amendment. *See Calderon*, 181 F.3d at 1186-87; *U.S. ex rel. Custom Grading, Inc. v. Great Am. Ins. Co.*, 952 F. Supp. 2d 1259, 1270 (D.N.M. 2013).

**B.      Mr. Torres Has Not Demonstrated That he is Entitled to Relief Under § 2254**

Federal courts have statutory authority under § 2254 to issue habeas corpus relief for persons in state custody. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). The Antiterrorism and Effective Death Penalty Act circumscribes review of federal habeas claims that were adjudicated on the merits in state-court proceedings. *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). A federal court may only grant relief from a state court decision where the petitioner demonstrates that the trial court's resolution of his claims was either contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1), (2)). In analyzing the state court's decision, this Court may only review the record that was before the state court and all factual findings are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)).

Under § 2254(d)(1), the threshold question is whether the applicant is seeking to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *See Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved an unreasonable application of that clearly established law." *Byrd*, 645 F.3d at 1165 (internal quotation marks and citation omitted).

First, a state-court decision is contrary to clearly established law if the state court applies a rule different from the governing law set forth by the Supreme Court or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *See Hooks*, 689 F.3d at 1163. The state court is not required to cite to, or even be aware of, Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision

contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Second, a state-court decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a petitioner's case. *See Hooks*, 689 F.3d at 1163. AEDPA precludes issuance of a writ simply because the federal court concludes in its independent judgment that the state court applied the federal law erroneously or incorrectly. *See Byrd*, 645 F.3d at 1166. Instead, the application must also be objectively unreasonable. *See id.*

In "deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact" a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* As long as fair minded jurists could disagree as to the correctness of the state court's decision, this highly deferential standard for evaluating state-court rulings "demands that state-court decisions be given the benefit of the doubt." *Hooks*, 689 F.3d at 1163; *see Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### 1. Mr. Torres' Convictions Were Supported by Sufficient Evidence

Here, Mr. Torres contends that his convictions for first degree murder, conspiracy to commit murder, attempted murder, and unlawful transportation of a firearm are not supported by substantial evidence. [Doc. 1, pp. 16-17].

A litigant is entitled to federal habeas relief on a sufficiency of the evidence claim if no

rational trier of fact could have found him guilty beyond a reasonable doubt based on the evidence presented at trial. 28 U.S.C. § 2254(d)(2). In reviewing a claim for sufficiency of the evidence, a court must take both direct and circumstantial evidence, together with reasonable inferences drawn in favor of the prosecution and determine whether a reasonable jury could find him guilty. *U.S. v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005).

It is within the province of the jury, as the fact-finder, to resolve conflicting testimony and make credibility determinations. *Id.*; *see U.S. v. Butler*, 966 F.2d 559, 563 (10th Cir. 1992). As such, the only question for a federal court on review is whether the criminal defendant's conviction was "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 655-56 (2012). The evidence must be blatantly contradicted by the record, so that no reasonable jury could believe it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The reviewing court cannot second-guess the jury's credibility determinations or "reassess the jury's conclusions about the weight of the evidence presented." *U.S. v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995). Rather, the court's review is sharply limited, and it must accept the jury's resolution of the evidence as long as it is within the bounds of reason. *Barger v. Oklahoma*, 238 Fed. Appx. 343, 345-46 (10th Cir. 2007) (unpublished). In its review, the federal court "must look to state law for the substantive elements of the criminal offense." *Coleman*, 566 U.S. at 655.

a. **Evidence Presented at Trial Was Sufficient to Support Mr. Torres' Convictions for the Murder of Carlos Perez and the Attempted Murder of Ruben Perez**

Under New Mexico law, a conviction for first degree murder is valid where sufficient evidence was presented at trial from which a reasonable jury could find beyond a reasonable doubt that the defendant killed another human being, without lawful justification or excuse, by any kind of willful, deliberate, and premeditated killing. *See* § 30-2-1. In this case, the State presented a theory that Mr. Torres was an accessory to Carlos' murder. Under New Mexico law, a conviction

for aiding and abetting a murder is valid if sufficient evidence was presented at trial from which a reasonable jury could find beyond a reasonable doubt that the defendant intended that the murder be committed, the murder was committed, and the defendant helped, encouraged, or caused the murder to be committed. NMSA 1978, § 30-1-13 (1963); UJI 14-2820 NMRA. A conviction for attempted murder is valid where sufficient evidence was presented at trial from which a reasonable jury could infer that the defendant took an overt action in furtherance of and with intent to commit murder and tending but failing to effect its commission. *See* § 30-2-1; § 30-28-1.

Here, Mr. Torres alleges that there was insufficient evidence presented at trial to support a finding that he harbored the requisite statutory intent to be found guilty of murder or attempted murder beyond a reasonable doubt. [Doc. 1, pp. 16-17]. Understanding the contours of intent and its application in the context of the criminal law is an arduous task. Indeed, "the meaning of the word 'intent' in the criminal law has always been rather obscure." *Torres v. Mullin*, 317 F.3d 1145, 1153 (10th Cir. 2003). However, a jury may reach the conclusion that a defendant harbored the intent necessary to commit a crime even if the defendant denies having the intent. *Id.* Simply put, "a jury may disbelieve the defendant." *Id.* "Because an individual's intent is seldom subject to proof by direct evidence, intent may be proved by circumstantial evidence." *State v. Allen*, 2000-NMSC-002, ¶ 65, 128 N.M. 482, 507; *see Holland v. United States*, 348 U.S. 121, 140 (1954) (recognizing that "circumstantial evidence…is intrinsically no different from testimonial evidence" and concluding that the jury is tasked with "weighing the probabilities" of the defendant's innocence, based on both circumstantial and testimonial evidence); *Hooks*, 780 F.2d at 1530 ("A criminal conviction may be sustained on wholly circumstantial evidence."); UJI 14-201 NMRA ("A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and

the weighing of the consideration for and against the proposed course of action.").

In this case, witnesses at Mr. Torres' trial testified to the following: Mr. Torres spent the day preceding the murder with Edward Salas, who had a motive to kill Ruben based on the fight between Ruben and Edward's brother Orlando earlier that day [Doc. 8-2, pp. 2-3]; Mr. Torres arranged a ride for himself and Edward to the apartment complex where Ruben lived [Doc. 8-2, pp. 25, 45]; at the apartment complex, Mr. Torres and Edward shook hands with two individuals from the Suburban group and the four disappeared from sight shortly before gunshots were heard [Doc. 8-2, pp. 25-26, 45]; the shooter fired nine rounds into the Perez residence from a position approximately two to three feet from Ruben's bedroom window [Doc. 8-2, p. 46]; immediately after shots were fired, Mr. Torres ran toward Krystal's Camry in an excited state, smelling like burned matches [Doc. 8-2, pp. 4, 48]; the smell of gun powder is similar to the smell of burned matches [Doc. 832, p. 4]; once in the Camry, Edward received a phone call and said to Mr. Torres, "We didn't get him. We got the little boy," to which Mr. Torres replied, "Are you sure it was the little boy?" [Doc. 8-2, pp. 26, 46].

Addressing Mr. Torres' challenge to the sufficiency of the evidence to support the murder and attempted murder convictions on direct appeal, the New Mexico Supreme Court concluded that from this evidence a jury could have reasonably inferred that Mr. Torres: had the deliberate intent to kill Ruben; helped in the planning of the crime; and actively participated in the actual attempt to kill Ruben. [Doc. 8-2, p. 46].

Where, as here, there is intent to kill a certain person, and a different person is killed by mistake or accident, the crime "is the same as though the original intended victim had been killed. In such a case, the law regards the intent as transferred from the original intended victim to the actual victim." UJI 14-255-NMRA. Thus, the evidence presented at Mr. Torres' trial which is

sufficient to support a finding of intent to kill Ruben is also sufficient to support a finding of intent to kill Carlos. *Id.*

To the extent that Mr. Torres' challenge to the sufficiency of the evidence to support his murder conviction relies on Mr. Torres' own trial testimony that he was not present at the apartment complex at the time of the shooting, such testimony does not discount the other testimonial evidence that placed him at the scene. [Doc. 1, pp. 16-17]; *Bush*, 405 F.3d at 919 (recognizing that it is within the province of the jury, as the fact-finder, to resolve conflicting testimony and make credibility determinations). Mr. Torres' trial testimony alone, is not sufficient to rebut the factual determinations of the New Mexico Supreme Court on the record before it. *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016) ("The habeas petitioner bears the burden of rebutting the state court's factual findings by clear and convincing evidence." (internal quotation marks and citation omitted)).

The New Mexico Supreme Court's determination, that sufficient evidence supports Mr. Torres' convictions for the attempted murder of Ruben and the murder of Carlos, is entitled to deference, which Mr. Torres has not overcome. *Wilson*, 138 S. Ct. at 1191-92; *Yarborough*, 541 U.S. at 664; *Hooks*, 689 F.3d at 1163. As such, it cannot be asserted that, when viewing the evidence "in the light most favorable to the government," no rational jury could convict Mr. Torres of first degree murder. *See, U.S. v. Bush*, 405 F.3d at 919.

**b. Evidence Presented at Trial Was Sufficient to Support Mr. Torres' Conviction for Conspiracy to Commit First Degree Murder**

Under New Mexico law, a conviction for conspiracy to murder is valid where sufficient evidence was presented at trial from which a reasonable trier of fact could find beyond a reasonable doubt that the defendant agreed with one or more persons and each intended to commit murder. *See* § 30-2-1; § 30-28-2; UJI 14-2810 NMRA.

In this case, the New Mexico Supreme Court determined that, based on the evidence presented at trial, a reasonable or reasoning jury could find that Mr. Torres was part of an agreement to murder Ruben Perez. [Doc. 8-2, pp. 47-48]. Specifically, the New Mexico Supreme Court pointed to the evidence that Mr. Torres was with Edward the day before the shooting, he secured a ride for himself and Edward to the apartment complex where Ruben lived, they arrived at the apartment complex at the same time as the Suburban group, Mr. Torres shook hands with the persons from the Suburban group before shots were heard, he went to the shooting scene before the shots were fired, he ran back from the scene smelling like burned matches immediately after the shots were fired, and when Edward informed him that they shot the wrong person, Mr. Torres asked Edward if he was sure. [*Id.*].

Mr. Torres does not refute this evidence. Rather, he argues that notwithstanding this evidence, the jury would have had to speculate that he was involved in an agreement to murder Ruben. [Doc. 1, pp. 16-17]. This argument is unavailing. As the Tenth Circuit has recognized, "in determining whether a conspiracy exists at the time of a challenged statement, the trial court may consider the inferences reasonably drawn from the evidence submitted." *Trujillo v. Sullivan*, 815 F.2d 597, 614–15 (10th Cir. 1987). "The apparently planned cooperation between the defendants, which is sufficient circumstantial evidence to support the mutually implied understanding necessary to establish a conspiracy, is an adequate foundation for the inference that the conspiracy existed at least shortly before the fight, when the challenged statement was made." *Id.*

Here, the jury was permitted to infer an agreement and mutual intent from the evidence presented at Mr. Torres' trial. And this Court must accept the jury's resolution of the evidence as long as it is "within the bounds of reason," which I conclude it was. *See Barger*, 238 Fed. Appx. at 345-46.

### c. Evidence Presented at Trial Was Sufficient to Support Mr. Torres' Conviction for Unlawful Transportation of a Firearm

Under New Mexico law, a conviction for unlawful transportation of a firearm is valid where sufficient evidence was presented at trial from which a reasonable trier of fact could find beyond a reasonable doubt that the defendant was a convicted felon and knowingly transported a firearm. *See* § 30-7-16.

In this case, Mr. Torres does not dispute that he was a convicted felon in September 2005 when the events underlying his criminal convictions took place. [Doc. 1, pp. 16-17]. However, Mr. Torres contends that he was not near or in possession of a firearm around the time of the shooting. [*Id.*]. However, this contention is belied by the record. As the New Mexico Supreme Court noted, Mr. Torres' version of the events of September 14, 2005 and September 15, 2005 varies greatly from that of the other witnesses who testified at his trial. [Doc. 8-2, p. 49]. However, by Mr. Torres' own admission, he was driving Edward Salas around on September 14, 2005 and was aware that Edward had a gun in the vehicle. [*Id.*]. Because the relevant statute prohibits a convicted felon from even transporting a firearm, Mr. Torres' admission alone is sufficient to support his conviction for being a felon in possession of a firearm. *See* § 30-7-16.

### 2. Mr. Torres' Convictions for First Degree Murder and Attempted First Degree Murder Did Not Violate Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See United States v. Dixon*, 509 U.S. 688, 695-96 (1993). Here, Mr. Torres asserts double jeopardy on the basis that he received multiple punishments for the same offense. [Doc. 1, pp. 18-19]. The determination of whether "punishments are multiple in violation of the Double Jeopardy Clause is essentially one of

legislative intent." *Dennis v. Poppel*, 222 F.3d 1245, 1251 (10th Cir. 2000). Federal courts must "defer to a state court's interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes." *Thomas v. Kerby*, 44 F.3d 884, 887 (10th Cir. 1995) (citations omitted).

Under New Mexico law, there are two ways in which double jeopardy protections can be violated by multiple punishments. *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. The first involves multiple convictions under the same statute for the same criminal conduct, which presents a unit-of-prosecution issue. *Id.* The second involves multiple convictions under different statutes for the same criminal conduct, which presents a double-description issue. *Id.* ¶¶ 7, 10. On direct appeal, Mr. Torres argued that his convictions for first degree murder and attempted murder constituted multiple punishments for the same conduct. [Doc. 1, pp. 18-19]. The New Mexico Supreme Court analyzed this issue as a unit-of-prosecution challenge. [Doc. 8-2, pp. 37-39].

In reviewing a unit-of-prosecution challenge, the only basis for relief is proof that a defendant was charged with and convicted of "more counts of the same statutory crime than is statutorily authorized." *Bernal*, 2006-NMSC-050, ¶ 13. The unit-of-prosecution analysis involves a two-step inquiry. *Id.* ¶ 14. First, the court reviews the statutory language for guidance on the unit of prosecution. *Id.* If the statutory language is clear regarding the unit of prosecution, the statutory language governs and the unit-of-prosecution inquiry is complete. *Id.* ¶ 14 (citation omitted). If the statute is not clear, the court must determine whether the defendant's acts "are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Id.* (internal quotation marks and citation omitted).

Considering the statutory language of Section 30-2-1(A), the New Mexico Supreme Court

has determined that the statutory language is clear regarding the unit of prosecution. *See* § 30-2-1(A) ("Murder in the first degree is the killing of *one* human being by another." (emphasis added)). The unit of prosecution under the statute depends on the number of victims; one murder results in one murder charge and two murders result in two murder charges. *See id.* Because the unit of prosecution set forth in Section 30-2-1(A) "is clearly dependent on the number of victims, it follows that the Legislature intended the unit of prosecution for attempted murder to also depend on the number of victims targeted in the attempt." *State v. Torres*, 2018-NMSC-013, ¶¶ 33-34; *see State v. Gillette*, 1985-NMSC-037, ¶¶46-47, 102 N.M. 695, 637-636 (affirming multiple convictions for attempted murder where the intended victim and two unintended victims ingested poison after the defendant attempted to poison the intended victim, noting that the defendant could be found guilty for attempting to murder each individual who ingested the poison).

In this case, Mr. Torres' convictions for murder and attempted murder correspond to crimes committed against two victims. Under the New Mexico Supreme Court's interpretation of Section 30-2-1(A), these crimes committed against distinct victims do not constitute multiple punishments for the same offense in violation of double jeopardy protections. *See Torres*, 2018-NMSC-013, ¶¶ 33-34; *State v. Gillette*, 1985-NMSC-037, ¶¶46-47.

### 3. Being Placed in Leg Restraints During Proceedings Did Not Deprive Mr. Torres' of a Fair Trial

It is not disputed that Mr. Torres was required to wear leg restraints during his trial. Mr. Torres alleges that wearing the leg restraints undermined the presumption of his innocence and prevented him from attending side bar conferences with his counsel in violation of his Fifth and Fourteenth Amendment rights. [Doc. 1, pp. 23-24].

### a. The Presumption of Mr. Torres' Innocence Was Not Undermined Since There is no Evidence That the Leg Restraints Were Visible to the Jury

"The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). However, Mr. Torres does not allege and there is no indication in the record that the leg restraints were ever visible to the jury. In fact, the record reflects that the trial court took steps to prevent the leg restraints from being visible to the jury. [Doc. 8-2, p. 54].

Moreover, "[i]n itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial." *United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) (citations omitted). In order to establish a violation of due process, Mr. Torres bears the burden to show that viewing him in shackles resulted in prejudice, which he has not done. *Id.*

### b. The Leg Restraints Did Not Interfere with Mr. Torres' Ability to Participate in His Defense

A criminal defendant has a due process right to be present "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *United States. v. Gagnon,* 470 U.S. 522, 526 (1985) (internal quotation marks and citation omitted). However, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* (internal quotation marks and citation omitted); *see also United States v. Beirle*, 810 F.3d 1193, 1198. That determination is made in light of the record as a whole. *Gagnon,* 470 U.S. at 526-27.

In *Gagnon,* the Supreme Court found that the due process rights of the defendants in that case were not violated when they were excluded from an *in camera* conference between the judge, defense counsel and a juror regarding the juror's possible bias. The Court based its holding on the

24

fact that the defendants "could have done nothing had they been at the conference, nor would they have gained anything by attending." *Id.* at 527.

Similarly, here Mr. Torres has not demonstrated or argued that his absence from sidebar conferences detracted from his defense or in any other way affected the fundamental fairness of his trial. I conclude that Mr. Torres' interests were sufficiently protected by his counsel's presence at the conferences and that Mr. Torres therefore had no due process right to attend.

### 4. Mr. Torres' Has Not Shown That His Counsel Provided Ineffective Assistance

The Sixth Amendment to the United States Constitution guarantees Petitioner the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). For federal habeas petitions brought under Section 2254(d), *Strickland* is clearly established federal law. *See Williams*, 529 U.S. at 390. To succeed under *Strickland*, a habeas petitioner must show that his "counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687-88. Courts "may address the performance and prejudice components in any order, but need not address both if [the petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

To establish *Strickland's* first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted). This requires the petitioner to establish that the "attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (internal quotation marks and citation omitted). To satisfy the prejudice prong, the petitioner "must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997). In applying this test, the Court must give considerable deference to counsel's strategic decisions, recognizing that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

### a. Mr. Torres Has Not Shown That Counsel Was Ineffective in Waiving His Right to Testify Before the Grand Jury

Mr. Torres claims that his counsel provided ineffective assistance by waiving his right to testify before the grand jury without his consent. [Doc. 1, p. 26]. New Mexico grants a target of a grand jury investigation the right to testify and to have exculpatory evidence presented. *See* NMSA 1978, § 31-6-11(C)(3)-(4) (2003). However, there is no comparable federal right. *See United States v. Williams*, 504 U.S. 36, 52 (1992). Errors of state law alone provide no basis for federal habeas relief. *Estelle*, 502 U.S. at 67-68. As a basis for an ineffective assistance counsel claim, Mr. Torres must show that counsel's decision to waive his right under state law to testify before the grand jury without his consent was objectively unreasonable, and that it prejudiced his defense. *See Strickland,* 466 U.S. at 687-88.

Mr. Torres has not provided any factual or legal basis to support his claim under either of prong of the *Strickland* analysis. Mr. Torres does not address the objective reasonableness of counsel's performance. [Doc. 1, p. 26]. Nor does he describe the testimony he could have provided nor articulate how, but for counsel's alleged error, the outcome of the proceeding would have been

different. [*Id.*]. Moreover, once a petit jury has returned a guilty verdict, errors potentially affecting the grandy jury's finding of probable cause are rendered harmless. *See United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1245 (10th Cir. 1996) ("A petit jury's subsequent guilty verdict…not only establishes there was probable cause to believe the defendant was guilty as charged, but also that the defendant was guilty beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." (internal quotation marks and citation omitted)).

    **b. Mr. Torres Has Not Shown That Counsel Was Ineffective in Not Calling Certain Character Witnesses**

Mr. Torres also claims that his counsel provided ineffective assistance because she failed to call certain character witnesses at trial. [Doc. 1, p. 26]. Mr. Torres asserts that counsel had limited access to him during his pretrial detention, which prevented her from calling certain witnesses at trial that could have testified to Mr. Torres' non-violent nature. [*Id.*]. However, Mr. Torres does not identify any character witnesses that could have been introduced, describe the testimony that could have been offered on his behalf, nor articulate how, but for counsel's failure to produce the character witnesses, the outcome of his trial would have been different. [*Id.*]. Accordingly, Mr. Torres' ineffective assistance of counsel claim fails because he has not demonstrated that his counsel's performance was deficient nor that he was prejudiced by his counsel's alleged errors. *Strickland,* 466 U.S. at 687-88.

To the extent that Mr. Torres relies on his counsel's alleged admission of her own ineffectiveness [Doc. 1, p. 26], such an admission does not inform the Court's analysis here. Under *Strickland*, evaluating a claim of ineffective assistance of counsel "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. For this reason, personal opinions of trial counsel and other attorneys

regarding what constitutes effective assistance are not dispositive and have little weight. *Newland v. Hall*, 527 F.3d 1162, 1208 (11th Cir. 2008).

**5. Mr. Torres' Claim That the District Court Erred in Not Allowing Him to Cross-Examine a State's Witness About a Prior Bad Act Was Not Exhausted but Should be Denied on the Merits**

A state prisoner generally may not raise a claim for federal habeas corpus relief unless he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "To exhaust a claim, a state prisoner must pursue it through one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (internal quotation marks and citation omitted). This requires that the claim be presented in a way that alerts the state court to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29, (2004).

In addition to the exhausted claims detailed above, the Petition includes one claim which is unexhausted. Specifically, Mr. Torres claims that the trial court erred in not allowing him to cross-examine a state's witness about a prior bad act. [Doc. 1, pp. 21-22]. Mr. Torres asserts that this error denied him "his ability to fully confront the witness in violation of the sixth and Fourteenth Amendments to the U[nited] S[tates] Constitution." [*Id.*]. When Mr. Torres raised this issue on direct appeal to the New Mexico Supreme Court, Mr. Torres argued that the trial court's ruling was a misapplication of New Mexico's evidentiary rules 11-608 NMRA and 11-609 NMRA but did not raise the constitutional issues presented here. [Doc 8-1, pp. 54-58; Doc. 8-2, pp. 14-16]. Consequently, the New Mexico Supreme Court was not alerted to and did not have an opportunity to address those issues. [Doc. 8-2, pp. 49-52].

Since Mr. Torres has presented a "mixed petition" containing both exhausted and unexhausted claims the Court may do one of four things: (1) dismiss the mixed petition in its

entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit. *See Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009). Because I find that this claim, along with all the other claims, is without merit, I recommend ignoring the exhaustion requirement and denying it.

The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska,* 415 U.S. 308, 315-16 (1974) (internal quotation marks and citation omitted). A defendant, however, does not have an unlimited right to cross-examination, and the trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986); *see also Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (*per curiam*) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

Mr. Torres complains that the trial court erred when it refused to let him cross-examine Detective Keith Farkas about an alleged prior bad act. [Doc. 1, pp. 21-22]. Detective Farkas worked for the Clovis Police Department in 2005 and conducted the crime scene investigation on the Suburban and the Camry. [Doc. 8-2, p. 28]. During Mr. Torres' trial, Detective Farkas testified that the evidence collected from the Suburban and the Camry, consisting of fingerprints, hair, and

gunshot residue, produced no conclusive evidence as to the vehicles' occupants. [*Id.*, pp. 28-29].

After conducting his crime scene investigation and prior to Mr. Torres' trial, Detective Farkas was accused of and criminally charged for stealing a work computer. [*Id.*, p. 29]. While the criminal charges were later dropped, Detective Farkas was dismissed from the Clovis Police Department because of the incident. [*Id.*].

Mr. Torres sought to cross-examine Detective Farkas regarding the alleged theft and argued that the evidence was admissible because it went to Detective Farkas' credibility and trustworthiness. [*Id.*]. The trial court excluded the cross-examination under New Mexico's evidentiary Rule 11-403 NMRA, which provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." [Doc. 8-2, p. 28].

The United States Supreme Court has distinguished between a "general attack" on witness credibility and a more particular attack "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Only the latter form of questioning is clearly protected under the Sixth Amendment. *Id.* at 316, 320, 94 S.Ct. 1105. "It is within the trial court's discretion to limit more general attacks on the witnesses' credibility." *Dalton v. Dinwiddie*, 273 F. App'x 724, 726–27 (10th Cir. 2008); *see Quinn v. Haynes,* 234 F.3d 837, 845 (4th Cir.2000); *Boggs,* 226 F.3d at 739; *Hogan v. Hanks,* 97 F.3d 189, 191 (7th Cir.1996); *United States v. Bartlett,* 856 F.2d 1071, 1088-89 (8th Cir.1988); *Hughes v. Raines,* 641 F.2d 790, 793 (9th Cir.1981); *Mills v. Estelle,* 552 F.2d 119, 122-23 (5th Cir.1977); *see also Davis,* 415 U.S. at 321 (Stewart, J., concurring) ("I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in

every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions."). "It is therefore acceptable under *Davis* for the trial court to impose reasonable restrictions on this type of cross-examination." *Dalton*, 273 F. App'x at 726–27.

Here, Mr. Torres did not intend to cross-examine Detective Farkas about the theft charge in order to "establish bias against the defendant or for the prosecution." *Hughes,* 641 F.2d at 793. Rather, the charge merely would have been an attempt "to attack the general credibility of the witness on the basis of an unrelated prior incident." *Id.* Given the general nature of the attack intended on Detective Farkas' character and that the fact that the charge was not prosecuted, I conclude that the trial court did not err in exercising its discretion to exclude cross-examination on the theft charge.

To the extent the Mr. Torres argues that the trial court's decision to exclusion cross-examination of Farkas on the theft charge deprived him of due process under the Fourteenth Amendment, Mr. Torres has not articulated a distinct basis for such a claim. [Doc. 1, pp. 21-22]. The trial court's decision and the decision of the New Mexico Supreme Court on this issue involved interpretation of New Mexico's evidentiary rules. [Doc. 8-2, p. 28]. Absent a specific constitutional violation, federal habeas review of state court errors is limited to whether the error "so infected the [proceeding] with unfairness as to make the resulting conviction a denial of due process." *Lewis*, 497 U.S. at 780.

As there was no violation of Mr. Torres' Sixth Amendment right to confrontation, Mr. Torres has not advanced any other argument in support of a Fourteenth Amendment claim, and the state courts' decisions on the cross-examination issue involved interpretation of New Mexico's evidentiary rules, Mr. Torres has failed to demonstrate or allege a cognizable Fourteenth

Amendment claim based on the trial court's decision to exclusion cross-examination of Farkas on the theft charge. *See Lewis*, 497 U.S. at 780; *Langford*, 110 F.3d at 1389 (acknowledging that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process.").

## C. Mr. Torres' Request for Discovery and Appointment of Counsel Should be Denied

On March 15, 2019, Mr. Torres filed a *Motion for Appointment of Counsel* requesting the opportunity to conduct discovery and the appointment of counsel. [Doc. 5].

### 1. Discovery is Not Appropriate Because Review of Mr. Torres' § 2254 Petition is Limited to the Record Before the State Court

Mr. Torres contends that he requires discovery to obtain new and exculpatory evidence that will help exonerate him. [Doc. 5]. In *Cullen*, the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 181-85; *see also Black v. Workman*, 682 F.3d 880, 895 (10th Cir. 2012) (extending *Cullen* to claims reviewed under § 2254(d)(2)). In this case, the merits of Mr. Torres' claims were adjudicated on direct appeal and through his state habeas proceedings. [Doc. 8-2, pp. 22-60; Doc. 8-2, pp. 115-125; Doc. 8-3, p. 73]. Although the trial court and the New Mexico Supreme Court dismissed Mr. Torres' habeas petition and petition for writ of certiorari summarily, a summary dismissal is presumptively a dismissal on the merits. *Harrington*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

The Supreme Court in *Cullen* addressed only evidentiary hearings and the Tenth Circuit has not yet considered *Cullen's* effect on Rule 6 discovery requests. However, the Court's reasoning in *Cullen* that § 2254 "requires an examination of the state-court decision at the time it

was made" extends to Rule 6 discovery motions. *See* 563 U.S. at 182. Further discovery under Rule 6 would unearth evidence that was not before the state court and is therefore irrelevant to § 2254 review. *See Cullen*, 563 U.S. at 184; *see also Tharpe v. Humphrey*, 2012 WL 174844, at *4 (M.D. Ga. Jan. 20, 2012) (extending *Cullen* to discovery requests under Rule 6); *Hurst v. Branker*, 2011 WL 2149470, at *7-*8 (M.D.N.C. June 1, 2011) (same); *Coddington v. Cullen*, 2011 WL 2118855, at *2-*3 (E.D. Cal. May 27, 2011) (same); *but see Rossum v. Patrick*, 659 F.3d 722, 737 (9th Cir. 2011) (Gertner, J., dissenting) ("By not purporting to change or overrule these [Rule 6 discovery] standards, the Court [in *Cullen*] did not intend to preclude [evidentiary] hearings in all cases."). Because Mr. Torres' claims were decided on the merits and are therefore governed by § 2254(d), this Court cannot consider new evidence, rendering any additional discovery futile.

2.  **Even if Mr. Torres' Request for Discovery is Not Barred by *Cullen*, Mr. Torres Has Not Shown Good Cause Exists to Conduct Discovery**

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing § 2254 Proceedings provides that a judge "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil procedure." In the context of a proceeding under 28 U.S.C. § 2254, the Tenth Circuit has "held that good cause is established where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *United States v. Moya-Breton*, 439 F. App'x 711, 715-16 (10th Cir. 2011) (unpublished) (internal quotation marks and citation omitted).

Mr. Torres has not put forth any specific allegations that indicate he may be entitled to habeas relief if certain facts were fully developed. [*See generally* Doc. 5]. Accordingly, good cause to authorize discovery has not been established.

### 3. Mr. Torres Has Not Demonstrated That he is Entitled to Appointment of Counsel

Under the Rules Governing § 2254 Proceedings counsel may be appointed where the Court has granted leave to conduct discovery and if appointment of counsel is necessary for effective discovery.[7] As Mr. Torres has not met his burden to show that discovery is warranted in this case, appointment of counsel to assist with discovery is also unwarranted.

### D. Mr. Torres' Motion to Proceed in Forma Pauperis is Moot

Mr. Torres filed a motion to proceed in forma pauperis along with his §2254 Petition, requesting that the filing fee for the Petition be waived. [Doc. 2]. However, Mr. Torres paid the filing fee the next day. [Doc. 3]. Accordingly, I recommend that the motion be denied as moot.

### IV. RECOMMENDATION

For the foregoing reasons, I propose that the Court find that:

1. Mr. Torres' claim regarding alleged IAD violations is not cognizable under §2254;

2. Mr. Torres' claims regarding recusal of the state court judge and erroneous grand jury testimony present matters of state law not reviewable on federal habeas;

3. Mr. Torres' request for leave to amend his § 2254 Petition is premature;

4. Mr. Torres' convictions for first degree murder, conspiracy to commit first degree murder, attempted murder, and unlawful transportation of a firearm were supported by sufficient evidence;

5. Mr. Torres' convictions for attempted murder and first degree murder did not violate double jeopardy protections;

---

[7] Counsel also must be appointed if the Court determines that evidentiary hearing is necessary under Rule 8(a) of the Rules Governing Section 2254 Proceedings for the United States District Courts. However, because the outcome of Mr. Torres' Petition turns on matters of law and its recommended disposition requires no further factual development, I conclude that no evidentiary hearing is necessary and therefore appointment of counsel for that purpose is not required.

6.  Being placed in leg restraints during trial did not deprive Mr. Torres of a fair trial;

7.  Mr. Torres' counsel's performance was objectively reasonable and Mr. Torres' defense was not prejudiced by any claimed deficiency;

8.  Mr. Torres has not demonstrated good cause to grant discovery under Rule 6 of the Rules Governing Section 2254 Proceedings;

9.  An evidentiary hearing is not required under Rule 8(a) of the Rules Governing Section 2254 Proceedings; and

10. Mr. Torres is not entitled to appointment of counsel under the Rules Governing Section 2254 Proceedings.

Therefore, I recommend to the District Judge that the *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* [Doc. 1], *Motion to Proceed in Forma Pauperis* [Doc. 2], and *Motion for Appointment of Counsel* [Doc. 5] be DENIED, and that a certificate of appealability be DENIED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**