IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NOE TORRES,

    Petitioner,

v.                                                       No. CV 19-00209 KWR/JHR

DWAYNE SANTISTEVAN, *et al*,

    Respondents.

**MEMORANDUM OPINION AND ORDER
OVERRULING OBJECTIONS AND ADOPTING MAGISTRATE
JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court under 28 U.S.C. § 636(b)(1) (2018) on the Magistrate Judge's Proposed Findings and Recommended Disposition, (Doc. 13) and on Petitioner Noe Torres' Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 18). The Court overrules Petitioner's Objections and adopts the Magistrate Judge's Proposed Findings and Recommended Disposition.

**I.**     **Factual and Procedural Background**

On the morning of September 15, 2005, ten-year-old Carlos Perez was shot and killed while he was asleep in his bedroom, which he shared with his older brother, Ruben Perez, the intended victim. (Doc. 8-2, p. 24). The day before the shooting, Ruben was involved in an altercation with Orlando Salas. (*Id.*). Later that night or in the early hours of September 15th, one of Orlando's brothers, Demitrio Salas and an associate, David Griego, arrived at the apartment complex where Ruben lived. (*Id.*). Petitioner and another of Orlando's brothers, Edward Salas, arrived separately. (*Id.*). Witnesses observed the four men greet one another before disappearing from sight. (*Id.*). Nine shots were fired into Ruben's bedroom. (*Id.*). Later, a witness heard Edward tell Petitioner,

"We didn't get him. We got the little boy." (*Id.*). Petitioner replied, "Are you sure it was the little boy?" (*Id.*). The next day, Petitioner fled to Mexico. (*Id.*).

On October 7, 2005, Petitioner was indicted on one count of first-degree murder; one count of attempted first-degree murder; and one count of shooting at a dwelling or occupied building. (Doc. 12-1, pp. 26-27). However, Petitioner remained at large until early 2012, when he was apprehended in Mexico. (*Id.*, p. 43). On July 11, 2012, Petitioner was extradited from Mexico and was subsequently arraigned on the charges in the October 7, 2005 indictment. (*Id.*, p. 67). On January 11, 2013, a Superseding Indictment was filed which charged Petitioner with: first-degree murder; attempted first-degree murder; shooting at a dwelling or occupied building; conspiracy to commit first-degree murder; conspiracy to shoot at a dwelling or occupied building; possession of a firearm by a felon; and intimidation of a witness. (*Id.*, pp. 176-178). A jury found Petitioner guilty on all counts. (Doc. 12-4, pp. 2-8). Petitioner was sentenced to a total term of life imprisonment plus 31.5 years, which included a three-year habitual offender enhancement. (Doc. 12-4, pp. 85-88).

Petitioner appealed his conviction to the New Mexico Supreme Court. (Doc. 1, pp. 97-98). The New Mexico Supreme Court affirmed Petitioner's convictions for first-degree murder, attempted first-degree murder, and conspiracy to commit first-degree murder, reversed Mr. Torres' convictions for shooting at a dwelling and conspiracy to shoot at a dwelling as violative of constitutional protections against double jeopardy, and vacated the habitual offender enhancement of his sentence. (*Id.*, p. 98). Subsequently, Petitioner filed a Petition for a Writ of Habeas Corpus in the state district court. (*Id.*, pp. 113-117). The state district court summarily dismissed Petitioner's habeas corpus petition on October 9, 2018. (Doc. 1, pp. 166-170). Petitioner's subsequent Petition for a Writ of Certiorari was denied by the New Mexico Supreme Court on

November 7, 2018. (Doc. 1, p. 185).

In his § 2254 Petition, Petitioner raises the following grounds for relief: (1) the trial court erred in denying his motion for directed verdict because there was insufficient evidence to support his convictions (Doc. 1, pp. 5, 16-17); (2) his convictions violate constitutional protections against double jeopardy (Doc. 1, pp. 7, 18-19); (3) the trial court erred in using a time-barred prior felony conviction to impose a habitual offender sentence enhancement (Doc. 1, pp. 8, 20);[1] (4) the trial court erred in not allowing him to cross-examine a state's witness about a prior bad act (Doc. 1, pp. 10, 21-22); (5) the trial court erred in allowing him to be shackled to the table during trial (Doc. 1, pp. 23-24); (6) he was denied effective assistance of counsel (Doc. 1, pp. 26-27); (7) the indictment should have been dismissed due to violations of the Interstate Agreement on Detainers (IAD), NMSA 1978, § 31-5-12 (1971) (Doc. 1, pp. 28-29); (8) the trial court erred in denying his pro se motion for recusal (Doc. 1, pp. 30-31); (9) the indictment should have been dismissed because a State's witness misled and manipulated the grand jury (Doc. 1, pp. 32-33); (10) he was unconstitutionally subject to pretrial detention at the Penitentiary of New Mexico (Doc. 1, pp. 34-36); and (11) he should be permitted to amend his petition to include "any additional issues (in the event he received the) full discovery, tape proceedings and copied transcript proceeding" that he requested. (Doc. 1, p. 39).

In the PFRD, the Magistrate Judge found that Petitioner's claims regarding alleged IAD violations, pretrial detention, recusal, errors in the grand jury proceedings, and Petitioner's request for leave to amend his petition were not reviewable under § 2254. (Doc. 13, pp. 6-13). The Magistrate Judge considered the remaining claims in the Petition, explaining that under 28 U.S.C.

---

[1] The three-year habitual offender sentence enhancement was vacated by the New Mexico Supreme Court on Petitioner's direct appeal (Doc. 1, p. 111), and Petitioner concedes that he has obtained relief relative to this issue (Doc. 1. p. 5). Accordingly, it was not addressed in the PFRD. (Doc. 13, p. 6, n. 2).

3

§ 2254(d) Petitioner must show that the state courts' decisions were contrary to or an unreasonable application of clearly established federal law, or that they were unreasonable determinations of fact. (Doc. 13, pp. 14-15). The Magistrate Judge found that the state courts' decisions regarding the sufficiency of the evidence, double jeopardy, the leg restraints used during trial, ineffective assistance of counsel, and denial of the opportunity to cross examination a state's witness were not contrary to or an unreasonable application of clearly established federal law and did not result from unreasonable determinations of fact in light of the evidence presented. (*Id.*, pp. 15-31). The Magistrate Judge also concluded that Petitioner was not entitled to discovery or appointment of counsel. (*Id.*, pp. 32-34).

In the PFRD, the Magistrate Judge notified the parties of their right to file written objections within fourteen (14) days after service of the PFRD and advised that filing of written objections was necessary to preserve any issue for appellate review of the PFRD. (*Id.*, p. 35). After an extension of time, Petitioner filed written objections to the PFRD on January 30, 2020.[2] (Doc. 18). Respondents did not object to the PFRD or respond to Petitioner's objections.

## II.  Legal Standards Governing Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition

Under 28 U.S.C. § 636(b)(1)(C), the Court conducts a de novo review of any objections to the Magistrate Judge's PFRD. To resolve an objection to the PFRD, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). A party's objections to the PFRD must be "both timely and specific to preserve an issue for de novo review

---

[2] On December 16, 2019, Petitioner moved for an extension of time to file his written objections. (Doc. 14). He also filed *Summary Objections* (Doc. 15), to be considered should his request for an extension be denied. In granting the requested extension on January 10, 2020, the Court gave Petitioner seventeen days from the entry its Order to file his written objections. (Doc. 17). Accordingly, the deadline for Petitioner's written objections was January 30, 2020, after including three days for service by mailing. *See* Fed. R. Civ. P. 6(d). The objections timely filed on January 30, 2020, were also titled "*Summary Objections,*" (Doc. 18) and are nearly identical in substance to the written objections filed December 16, 2020. (*Id.*).

4

by the district court or for appellate review." *United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996) ("*One Parcel*"). An objection must be sufficient to focus the Court on the factual and legal issues actually in dispute. *Id.* at 1060. Issues raised for the first time in an objection to the PFRD are deemed waived. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

### III. Insufficient Objections

In objecting to the Magistrate Judge's findings and recommendations, Petitioner makes several vague and conclusory objections that are insufficient to alert the Court to the factual and legal issues in dispute. These objections are outlined below.

With respect to Petitioner's claims that the trial judge should have recused himself and that false testimony was presented to the grand jury, the Magistrate Judge found that the claims each presented an issue of state law for which federal habeas relief was not available. (Doc. 13, pp. 11-12). Petitioner objects, stating that he is entitled to relief on those claims "under actual judicial bias, miscarriage of justice, actual innocence postconviction remedies rules/standard." (Doc. 18, p. 5). The asserted basis for relief on Petitioner's state law claims is not clear from the language of this objection. To the extent that Petitioner suggests that he is entitled to relief on the recusal claim because the issue was preserved in the state habeas proceedings, Petitioner does not explain how preservation of an issue for federal habeas review entitles Petitioner to federal habeas relief. (*Id.*, pp. 5, 13).

As to Petitioner's request to amend his federal habeas petition, the Magistrate Judge found that the request was premature because it was not made by formal motion, did not state the grounds for the request, and did not inform the parties or the Court of the basis for the proposed amendment.

(Doc. 13, pp. 12-13). Petitioner objects, stating that the state court record, if reviewed properly, "will demonstrate that the trial court's resolution was contrary to clearly established 4th, 5th, 6th, 8th, & 14th Constitutional Amendments." (Doc. 18, pp. 5-6). Petitioner further states that "the state courts along with [the Magistrate Judge's] 'factual findings' are INCORRECT and must stand rebutted by the clear and convincing evidence in [the record]. Unreasonable application and adjudication by State Court exists in State of New Mexico v. Noe Torres." (*Id.*, p. 6). It is not clear how this objection relates to Petitioner's request to amend his Petition or the Magistrate Judge's determination that his request was premature.

Regarding Petitioner's claim that being placed in leg restraints during state court proceedings deprived him of a fair trial, the Magistrate Judge found that the leg restraints did not undermine the presumption of Petitioner's innocence since they were not visible to the jury and that the leg restraints did not interfere with Petitioner's ability to participate in his defense. (Doc. 13, pp. 24-25). Petitioner objects, stating, "Presumption of Innocence was undermined! Please review record." (Doc. 18, p. 9). This conclusory objection does not give any indication of the factual or legal objection to the Magistrate Judge's determination on this issue.

Petitioner objects to the Magistrate Judge's conclusion that the trial court did not err in limiting cross examination of a state's witness, arguing that the Magistrate Judge "again is demonstrating Actual Judicial Bias against my person." (Doc. 18, p. 10). However, Petitioner does not provide any factual support for this allegation. Petitioner also argues, for the first time, that the alleged error in limiting the cross examination deprived him of his right to create reasonable doubt but does not explain how the testimony sought through the excluded cross examination could have done so. (*Id.*).

Finally, Petitioner's objects to the Magistrate Judge's conclusion that Petitioner was not

6

entitled to appointment of counsel under the Rules Governing § 2254 Proceedings. (Doc. 18, p. 11). Petitioner merely states that he "has demonstrated entitlement to appointment of counsel. (Doc. 18, p. 11).

These objections do not address the legal or factual bases for the Magistrate Judge's findings and recommendations, do not provide sufficient detail to alert the Court to the disputed factual and legal issues, and are therefore insufficient to preserve the issues outlined above for de novo review. *See One Parcel*, 73 F.3d at 1059-60. Further, to the extent that Petitioner has raised issues for the first time in his objections, de novo review of those issues has been waived. *Marshall*, 75 F.3d at 1426.

## IV. De Novo Review of Petitioner's Remaining Objections

### A. The Magistrate Judge Correctly Concluded That Petitioner's Claims Regarding Alleged IAD Violations and Unconstitutional Pretrial Detention are not Reviewable Under § 2254

#### 1. Petitioner's IAD Claim is Not Cognizable Under § 2254

Petitioner initially claimed that the state violated the IAD by not bringing him to trial within 120 days of his extradition from Mexico. (Doc. 1. p. 28). The Magistrate Judge found that Petitioner had not shown or even alleged special circumstances sufficient to bring his IAD claim within the scope of those reviewable under § 2254 and that the IAD is not applicable under the facts of this case because Petitioner was not extradited to New Mexico pursuant to an interstate detainer. (Doc. 13, pp. 6-7). Petitioner objects, arguing that he has shown special circumstances sufficient to bring his IAD claim within the scope of those reviewable under § 2254. (Doc. 18, p. 4).

As the Magistrate Judge explained in the PFRD, the IAD creates uniform procedures for lodging and executing a detainer, which requires a state to hold a prisoner after the completion of

his sentence so that he can be transferred to another state to face pending charges for a different crime. *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001). The rights afforded by the IAD are statutory rather than fundamental or constitutional. *Carchman v. Nash*, 473 U.S. 716, 719 (1985). Therefore, absent special circumstances, IAD claims are not cognizable under § 2254. *Carchman*, 473 U.S. at 719. Special circumstances are fundamental defects which inherently result in a complete miscarriage of justice or omissions inconsistent with demands of fair procedure. *Id.*

A *de novo* review of the record reveals that Petitioner's sole argument with respect to the alleged IAD violation was that he was not brought to trial within 120 days of his extradition from Mexico. (Doc. 1, p. 28). He has not alleged or produced any evidence to indicate that this delay resulted in a complete miscarriage of justice or was inconsistent with demands of fair procedure. Accordingly, Petitioner has failed to demonstrate special circumstances sufficient render his IAD claim cognizable under § 2254.

Petitioner claims that the IAD "transfers into federal extradition laws with Mexico/United States extradition treaties," which constitutes special circumstances sufficient render his IAD claim cognizable under § 2254. To the extent that Petitioner is suggesting that the IAD governs extradition to the United States from Mexico, he is incorrect. As previously discussed, the IAD governs interstate transfers where a prisoner is to face criminal charges in the receiving state. *Bozeman*, 533 U.S. at 148. Issues concerning extradition between the United States and Mexico are not controlled by the IAD but are governed by treaty. *See* Treaty Signed at Mexico City May 4, 1978, Mex.-U.S., May 4, 1978, 31 U.S.T. 5059 (governing extradition between the United States of America and the Mexican States).

Petitioner's conclusory objection is not supported by the record or the relevant law and is therefore insufficient to establish the applicability of the IAD to the facts of this case or to

demonstrate special circumstances which would bring his IAD claim within the scope of those reviewable under § 2254. *Carchman*, 473 U.S. at 719. Petitioner's objection on this issue is overruled.

   **2. Petitioner's Claim of Unconstitutional Pretrial Detention is Not Cognizable Under § 2254**

Petitioner objects to the Magistrate Judge's findings that (1) his claim that the conditions of his pretrial detention violated the protections of the Eighth Amendment against cruel and unusual punishment was not cognizable under § 2254 and (2) he failed to establish that the conditions of his pretrial detention were unconstitutional. (Doc. 13, pp. 4-5).

As discussed in the PFRD, challenges to conditions of confinement, as opposed to the legality of confinement, are appropriately brought in civil rights actions, not in habeas proceedings. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody."); *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) ("It is well-settled law that prisoners who wish to challenge only the conditions of their confinement...must do so through civil rights lawsuits...not through federal habeas proceedings." (alterations in original) (internal quotation marks and citation). Petitioner does not dispute that his challenge addresses the conditions of his pretrial detention rather than its legality. (Doc. 18, pp. 4-5). He simply concludes, without citation to authority, that such a claim is cognizable under § 2254. This unsupported conclusion has no basis in fact or law. (Doc. 18, pp. 4-5).

As to merits of Petitioner's constitutional claim, the state may have a legitimate nonpunitive interest in ensuring a defendant's presence at trial and may reasonably keep him in custody pending trial if he proves a flight risk. *See Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013). "Likewise, the government may have a legitimate interest in ensuring the safety and

order of the facilities where it houses pretrial detainees." *Id.* "Restraints bearing a reasonable relationship to interests like these do not constitute punishment even if they are discomforting." *Id.*; *see Bell*, 441 U.S. at 540.

In considering the constitutionality of the conditions of pretrial detention, the Court considers whether the restrictions in question are (1) imposed with an "expressed intent to punish on the part of detention facility officials" (2) reasonably related "to any legitimate governmental objective." *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); *see Bell v. Wolfish*, 441 U.S. 520, 538 (1997).

A review of the state court record reveals factual disputes regarding the extent to which Petitioner was restricted in his access to visitation and phone calls during pretrial detention. (Doc. 1, pp. 154-163). The record also reveals that Petitioner was transferred to the state penitentiary after his arraignment due to concerns that he was a flight risk, having just been extradited from Mexico where he was evading charges related to Carlos Perez' murder, and due to safety concerns related to Petitioner's criminal history. (Doc. 12-1, pp. 47-50). Petitioner has not argued or demonstrated that any restrictions imposed during his pretrial detention were imposed with a punitive intent or were unrelated to a legitimate state interest. (Doc. 18, pp. 4-5).

And while Petitioner claims that the restrictions imposed during pretrial detention were so severe that he was not allowed to confer with his counsel to prepare for trial, this claim is belied by the record. In addressing the trial court on the subject of access to Petitioner, his trial counsel stated that in the approximately 18 months during which she represented Petitioner she had limited access to him, which prevented her from obtaining the names of potential character witnesses in a timely manner. (CD 3/13/2015 8:32:20; 8:36:00).[3] However, the trial judge found that the alleged

---

[3] Pursuant to the Court's *Order to Produce State Court Record* (Doc. 11), a CD containing audio recordings of the hearings and the trial conducted in the underlying criminal case was produced and lodged with the Clerk of Court.

limited access and late discovery of potential character witnesses did not rise to the level of a constitutional violation. (CD 3/13/2015 8:36:00 - 8:36:30).

For these reasons, the Court finds no error in the Magistrate Judge's findings on this issue and will overrule Petitioners objections.

> **B. The Magistrate Judge Correctly Determined that Petitioner was not Entitled to Federal Habeas Relief on his Claims of Insufficiency of the Evidence, Double Jeopardy, and Ineffective Assistance of Counsel**

**1. Federal Court Habeas Corpus Review Under 28 U.S.C. § 2254**

A prisoner in state custody may seek federal habeas corpus relief under 28 U.S.C. § 2254. Section 2254 provides that a "district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus. If, as in this case, the application includes a claim that has been adjudicated on the merits in state court proceedings, § 2254(d) expressly limits federal court review. Under § 2254(d), a habeas corpus application shall not be granted with respect to such a claim unless the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

Under this standard, a federal habeas court "reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers,* 548 U.S. ___, 138 S.Ct. 1188, 1191-92 (2018). The standard is highly deferential to the state court rulings and demands that

---

(Doc. 12).

11

the state court be given the benefit of the doubt. *Harrington v. Richter,* 562 U.S. 86, 101 (2011); *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (per curiam). The standard is difficult for petitioners to meet in federal habeas proceedings under 28 U.S.C. § 2254. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Section 2254(d)(1)'s reference to "clearly established Federal law, as determined by the Supreme Court of the United States" refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under § 2254(d)(1), a state-court decision is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [that] precedent." *Williams*, 529 U.S. at 405-406. A state court need not cite, or even be aware of, applicable Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

A state-court decision is an "unreasonable application" of clearly established Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08. A District Court undertakes this objective unreasonableness inquiry in view of the specificity of the governing rule: "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). An unreasonable application of federal law is not the same as an incorrect application of federal law. *Williams*, 529 U.S. at 410. A federal court may not issue a habeas corpus writ simply because that court concludes the state-court decision applied clearly established federal law erroneously or incorrectly--the application must also be unreasonable. *Id.* at 411; *Harrington*, 562 U.S. at 98. The AEDPA authorizes issuance of a writ only in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with Supreme

Court precedents. *Harrington.* 562 U.S. at 102.

 2. **Petitioner is Not Entitled to § 2254 Relief on the Basis of Insufficient Evidence**

Petitioner objects to the Magistrate Judge's conclusion that the evidence presented at Petitioner's trial was sufficient to support his convictions for first-degree murder, attempted first-degree murder, conspiracy to commit murder, and unlawful transportation of a firearm. (Doc. 18, pp. 6-8). Petitioner argues that there was a lack of evidence presented at trial from which the jury could have inferred his guilt beyond a reasonable doubt and that the witnesses against him were not credible. (*Id*).

In reaching his conclusions regarding the sufficiency of the evidence to support Petitioner's convictions, the Magistrate Judge relied on the factual determinations made by the New Mexico Supreme Court. (Doc. 13, pp. 15-20). Relevant to Petitioner's convictions for first-degree murder, attempted first-degree murder, and conspiracy to commit first-degree murder, the New Mexico Supreme Court determined that: Petitioner spent the day preceding the murder with Edward Salas, who had a motive to kill Ruben based on the fight between Ruben and Edward's brother Orlando earlier that day (Doc. 8-2, pp. 2-3); Petitioner arranged a ride for himself and Edward to the apartment complex where Ruben lived (Doc. 8-2, pp. 25, 45); Petitioner and Edward arrived at the apartment complex at the same time as and shook hands with persons who arrived separately before gunshots were heard (Doc. 8-2, pp. 25-26, 45); a shooter fired nine rounds into the Perez residence from a position approximately two to three feet from Ruben's bedroom window (Doc. 8-2, p. 46); immediately after shots were fired, Petitioner ran from the scene smelling like burned matches (Doc. 8-2, pp. 4, 48); the smell of gun powder is similar to the smell of burned matches (Doc. 832, p. 4); and when Edward informed Petitioner that they shot the wrong person, Petitioner asked him if he was sure. (Doc. 8-2, pp. 26, 46).

In challenging the sufficiency of the evidence to support his convictions for first-degree

murder, first-degree attempted murder, and conspiracy to commit first-degree murder, Petitioner relied on his own trial testimony that he was not present at the apartment complex at the time of the shooting. (Doc. 1, pp. 16-17). Petitioner's testimony does not negate the other testimonial evidence that placed him at the scene. (Doc. 13, p. 19). Where the evidence presented supports conflicting accounts, it is the jury's job to resolve the conflict. *See U.S. v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005) (recognizing that it is within the province of the jury, as the fact-finder, to resolve conflicting testimony and make credibility determinations). As the Magistrate Judge noted, this Court cannot second-guess the jury's credibility determinations or "reassess the jury's conclusions about the weight of the evidence presented." *U.S. v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995). Rather, the Court's review is sharply limited, and it must accept the jury's resolution of the evidence as long as it is within the bounds of reason. *Barger v. Oklahoma*, 238 Fed. Appx. 343, 345-46 (10th Cir. 2007) (unpublished). Here, it cannot be said that the jury's conclusion that Petitioner was present at the time of the shooting is outside the bounds of reason, given the witness testimony that placed him at the scene.

In affirming Petitioner's conviction for unlawful transportation of a firearm, the New Mexico Supreme Court determined based on the evidence presented at trial, that Petitioner was a convicted felon, that he admitted to driving Edward Salas around September 14, 2005, and that he was aware that Edward had a gun in the vehicle. (Doc. 8-2, p. 49). Although Petitioner did not challenge these factual determinations in his Petition, in his objections, Petitioner claims that he was not aware that Edward had a gun while they were driving around together on September 14, 2005, and that he never made such an admission. (Doc. 18, pp. 7-8).

A review of the record reveals that Petitioner testified to the following during direct examination: Petitioner was with his cousin and Edward during the day on September 14, 2005.

(CD 3/13/2015 8:42:42, 8:42:52). Edward asked Petitioner to give him a ride to Edward's friend's house. (CD 3/13/2015 8:43:08, 8:44:05). Sometime after Edward returned to the vehicle, Petitioner's cousin told Petitioner that Edward had a gun. (CD 3/13/2015 8:45:26). Petitioner did not see a gun. (CD 3/15/2015 8:45:28). Petitioner questioned Edward about having a gun and Edward said, "It's nothing. Don't worry about it." (CD 3/13/2015 8:45:45-8:45:56). Petitioner told Edward that he could either go home with the gun or drop the gun off because Petitioner did not want to be around the gun. (CD 3/13/2015 8:46:11-8:46:17; 8:46:52-8:47:02). Petitioner did not think Edward took him seriously. (CD 3/13/2015 8:47:22).

Petitioner then drove to a house where he and his friends often hung out and played dominos. (CD 3/13/2015 8:46:18-8:46:36, 8:48:46). When they arrived, Petitioner saw his friend Shawn, with whom Edward did not get along. (CD 3/13/2015 8:48:46-8:49:07). Petitioner asked Shawn not to start anything with Edward. (CD 3/13/2015 8:49:08-8:49:15). Petitioner was concerned because he'd been told that Edward had a gun and because he'd observed Edward and thought Edward was acting like he had a gun. (CD 3/13/2015 8:49:09-8:49:14). Later, Petitioner heard Edward referring to Shawn, saying that he could just "handle him." (CD 3/13/2015 8:50:19-8:50:26). Petitioner understood this to mean that Edward might shoot Shawn. (CD 3/13/2015 8:51:10-8:51:21). Petitioner asked Edward to leave. (CD 3/13/2015 8:51:57). Petitioner did not think Edward would challenge him even though Edward had a gun, because Petitioner was not afraid to get shot. (CD 3/13/2015 8:53:43-8:55:59). During cross examination, the prosecutor asked Petitioner how he knew Edward had a gun, and Petitioner replied, "Because I was told he had a gun." (CD 3/13/2015 10:08:58 – 10:09:04).

This testimony does not constitute clear and convincing evidence sufficient to rebut the New Mexico Supreme Court's factual determination that Petitioner admitted that he was aware

15

that Edward had a gun in the vehicle while Petitioner was driving around with Edward on September 14, 2005. *See* Black's Law Dictionary 674 (10th ed. 2014) (defining "clear and convincing evidence" as "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain."); *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) ("The state court's factual determinations are cloaked with a presumption of correctness, and the presumption can be overcome only by clear and convincing evidence. What this means is that we must be objectively convinced that the record before the state court does not support the state court's findings in question.") (internal quotation marks and citation omitted)).

To the extent that Petitioner claims that the prosecutor and trial judge manipulated the jury and that the state courts' determinations reflect judicial bias against him, Petitioner offers no factual support for such conclusory allegations and they are, therefore, insufficient to undermine the validity of the state courts' determinations. (Doc. 18, pp. 6-7).

Petitioner has not demonstrated that, based on the evidence presented at trial, the jury could not have reasonably concluded that the elements of first-degree murder, first-degree attempted murder, conspiracy to commit murder, and unlawful transportation of a firearm were met, or that New Mexico Supreme Court's conclusion—that sufficient evidence supported his convictions—constitutes an unreasonable application of federal law. The Court finds no error in the Magistrate Judge's findings on this issue and will overrule Petitioners objections.

**3. Petitioner is Not Entitled to § 2254 Relief on the Basis of Double Jeopardy Violations**

Petitioner objects to the Magistrate Judge's conclusion that Petitioner's convictions for first-degree murder and attempted first-degree murder did not violate constitutional protections against double jeopardy. (Doc. 18, p. 8). Petitioner appears to argue that because the New Mexico Supreme Court held that his convictions for shooting at a dwelling and conspiracy to shoot at a

dwelling violated double jeopardy, all of his convictions should be reversed. (*Id.*). This argument is unavailing.

In evaluating Petitioner's double jeopardy claims on direct appeal, the New Mexico Supreme Court concluded that Petitioner's convictions for causing death or great bodily harm by shooting at a dwelling and first-degree murder violated the double jeopardy clause because the convictions arose from the same death. (Doc. 1, pp. 98-101). The court also concluded that Petitioner's separate convictions relative to the conspiracy to murder Ruben and the conspiracy to shoot a dwelling to accomplish that goal violated double jeopardy because the evidence did not show two separate conspiracies. (*Id.*, pp. 103-104). Rather, the evidence showed one overarching agreement, *i.e.*, one conspiracy to kill. (*Id.*).

The court noted that the double jeopardy clause protects against multiple punishments for the same crime. (*Id.*, p. 98). Where two otherwise valid convictions are found to violate double jeopardy, the remedy is to vacate one of the convictions, not both. (*Id.*, p. 101). Typically, the conviction carrying the shorter sentence is the one vacated. (*Id.*). Such a remedy satisfies constitutional requirements by ensuring that only one punishment is administered for the crime at issue. (*Id.*).

Having determined that Petitioner's convictions for shooting at a dwelling and first-degree murder violated double jeopardy, the New Mexico Supreme Court appropriately vacated Petitioner's conviction for shooting at a dwelling, which carried the shorter sentence. (*Id.*, p. 99). Likewise, having determined that Petitioner's convictions for conspiracy to shoot at a dwelling and conspiracy to commit first-degree murder violated double jeopardy, the court appropriately vacated the conviction for conspiracy to shoot at a dwelling, which carried the lesser sentence. (*Id.*, p. 104).

Petitioner offers no factual or legal support for his assertion that all of his convictions should have been vacated based on the double jeopardy violations identified by the New Mexico Supreme Court. (Doc. 18, p. 8). Therefore, the Court overrules this objection.[4]

## 4. Petitioner is Not Entitled to § 2254 Relief on the Basis of Ineffective Assistance of Counsel

Petitioner objects to the Magistrate Judge's conclusion that he failed to show that his trial counsel was ineffective by allegedly waiving his right to testify before the grand jury without his consent or by failing to call certain character witnesses at trial. (Doc. 18, pp. 9-16). Petitioner's objections on this issue reiterate the bases for the ineffective assistance claim asserted in the Petition, which were considered and addressed by the Magistrate Judge. (Doc. 13, pp. 26-27).

In order to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish deficient performance, the challenger must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. To establish prejudice, the movant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. The likelihood of a different result must be substantial, not just conceivable. *Harrington,* 562 U.S. at 112.

As the Magistrate Judge noted, Petitioner has not offered any factual basis for his claim that his counsel waived his right to testify before the jury without his consent. (Doc. 13, p. 26).

---

[4] The New Mexico Supreme Court also rejected Petitioner's claim that his convictions for first-degree murder and attempted first-degree murder violated double jeopardy because the convictions corresponded to crimes committed against two distinct victims; Ruben as the victim of attempted first-degree murder and Carlos as the victim of first-degree murder. (*Id.*, pp. 101-102). The Magistrate Judge concluded that Petitioner did not show that this determination involved an unreasonable application of federal law or was based on an unreasonable determination of fact. (Doc. 13, pp. 21-23). Petitioner does not directly object to this finding. Therefore, it is not addressed here.

Moreover, Petitioner has not addressed the objective reasonableness of his counsel's performance or any prejudice resulting from this alleged error. (*Id.*). Similarly, with respect to Petitioner's ineffectiveness claim resulting from counsel's failure to call certain character witnesses, Petitioner has not identified any potential witnesses or demonstrated that but for counsel's failure to call them, the outcome of his trial would have been different. (Doc. 18, p. 10). Petitioner argues for the first time in his objections that the failure of counsel to call character witnesses denied him the opportunity to create reasonable doubt. (*Id.*). However, because Petitioner has not identified potential witnesses or articulated how their testimony could have created reasonable doubt, this argument is unavailing. Petitioner has not met his burden under *Strickland*.

As to counsel's admission of ineffective assistance, personal opinions of trial counsel and other attorneys regarding what constitutes effective assistance are not dispositive and have little weight. *Newland v. Hall*, 527 F.3d 1162, 1208 (11th Cir. 2008). This is especially true where, as here, the petitioner has not demonstrated either unreasonable performance or prejudice. *See id.*; *Strickland,* 466 U.S. at 687. Petitioner's objections to the Magistrate Judge's findings on this issue are overruled.

5. **Petitioner not Demonstrated That he is Entitled to Discovery**

Petitioner objects to the Magistrate Judge's findings that discovery is not warranted in this case because review of the § 2254 Petition is limited to the record before the state court and because Petitioner has not shown good cause to allow discovery even if review of his Petition were not so limited. (Doc. 18, pp. 10-11). While Petitioner asserts that these conclusions are incorrect, he does not articulate the legal or factual basis for his assertions. (*Id.*).

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Under

Rule 6(a) of the Rules Governing § 2254 Proceedings, a judge "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil procedure." In the context of a proceeding under § 2254, "good cause is established where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *United States v. Moya-Breton*, 439 F. App'x 711, 715-16 (10th Cir. 2011) (unpublished) (internal quotation marks and citation omitted).

The Magistrate Judge concluded that Petitioner had failed to put forth any specific allegations that indicate he may be entitled to habeas relief if certain facts were fully developed. (Doc. 13, p. 33). The Court understands Petitioner to argue that discovery of "original statements and interrogation sessions of state witnesses" would lead to evidence relevant to his Petition. (Doc. 18, p. 11). However, this does not assist the Court in determining whether any specific facts, which if fully developed, would demonstrate the Petitioner is entitled to relief. The Court finds no error in the Magistrate Judge's findings on this issue and will overrule Petitioners objection.

**IT IS THEREFORE ORDERED** that Mr. Torres' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (Doc. 1), *Motion to Proceed in Forma Pauperis* (Doc. 2), and *Motion for Appointment of Counsel* (Doc. 5) are **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE